STATE OF RHODE ISLAND and PROVIDENCE PLANTATIONS

DEPARTMENT OF EDUCATION

SPECIAL EDUCATION DUE PROCESS HEARING

STUDENT: JOHN DOE

SCHOOL DISTRICT: TOWN OF NARRAGANSETT

HEARING OFFICER: ARTHUR G. CAPALDI, ESQ.
1035 MAIN STREET
COVENTRY, R.I. 02816

ATTORNEY FOR SCHOOL DEPT: MARY ANN CARROLL, ESQ.
155 SOUTH MAIN STREET
SUITE 102
PROVIDENCE, R.I. 02920

STUDENT'S ATTORNEY: FREDERICK G. TOBIN, ESQ.
SUMMIT EAST, SUITE 315
300 CENTERVILLE ROAD
WARWICK, R.I. 02886

EXHIBIT A

STATE OF RHODE ISLAND and PROVIDENCE PLANTATIONS

DEPARTMENT OF EDUCATION

SEPCIAL EDUCATION DUE PROCESS HEARING

STUDENT: [redacted]

SCHOOL DISTRICT: TOWN OF NARRAGANSETT

HEARING OFFICER: ARTHUR G. CAPALDI, ESQ.
1035 MAIN STREET
COVENTRY, R.I. 02816

ATTORNEY FOR SCHOOL DEPT: MARY ANN CARROLL, ESQ.
155 SOUTH MAIN STREET
SUITE 102
PROVIDENCE, R.I. 02920

STUDENT'S ATTORNEY: FREDERICK G. TOBIN, ESQ.
SUMMIT EAST, SUITE 315
300 CENTERVILLE ROAD
WARWICK, R.I. 02886

## LEXICON

For the purposes of the decision in the within hearing and to ensure confidentiality of the student, the following Lexicon shall be used in this decision:

**STUDENT:** [redacted]

**GRANDPARENTS:** [redacted]

**SCHOOL DISTRICT: NARRAGANSETT SCHOOL DEPARTMENT**

**HEARING OFFICER: ARTHUR G. CAPALDI, ESQ.**

**ATTORNEY FOR SCHOOL DEPT.: MARY ANN CARROLL, ESQ.**

**STUDENT'S ATTORNEY: FREDERICK G. TOBIN, ESQ.**

## POSITION OF PARTIES

**PARENT**: The proposed IEP for 2006-2007 provides that the Student be in a self-contained class for 100% of the school week and therefore the IEP is inappropriate. The Student should be in a regular class for Social Studies and Science. There are procedural violation involving the IEP preparation. Because of the above, the proposed IEP does not provide FAPE.

**SCHOOL DISTRICT**: The IEP for the school year 2006-2007 was not appropriate because the time in a self contained class was in error. The Student was not suppose to be in the self contained classroom for 100% of the school week but the Student would leave the self contained class for unified arts and physical education. The Student is not succeeding in the regular social study and science class and therefore should not be in a regular classroom for those subjects. Except for the error concerning the time in self contained class the proposed IEP meet's the Student's needs.

## ISSUES AND SUMMARY OF DECISION

**ISSUE:** Does the proposed IEP for the school year 2006-2007 provide the Student with FAPE?

**DECISION:** The proposed IEP for the 2006-2007 school year does not provide FAPE.

## TRAVEL OF THE CASE

On or about September 14, 2006, this Hearing Officer was appointed to hear and conduct this due process hearing. On September 18, 2006 notice of the appointment was sent to all parties. A copy of the School District's answer to the Grandparents complaint was received by the Hearing Officer on September 26, 2006. A prehearing conference was held on October 10, 2006. Hearings were held on the following dates: October 24, 2006, November 27, 29, 2006, December 1, 4, 8, 2006. The hearing was concluded on December 8, 2006.

On October 27, 2006 a request for an extension was granted. The decision due date was continued to December 24, 2006. At the conclusion of the hearing another request for extension of time was granted extending the decision due date to January 21, 2007.

## FACTS

The Student is twelve years old and is a student at the Narragansett Pier School. While in kindergarten the Student had and educational evaluation (Plaintiff's Exh. 7) which was conducted on February 24, 2004. The summary of the test stated:

> " Test results indicated that
> (the Student's) reading, spelling,
> reading comprehension, written
> language and numerical operations
> were in the superior range"
> (Plaintiff's Exh. 7)

When the Student was four years old he had an infection, a subdural empyema. The Student had a total of four brain surgeries. (Trans. 11-27-06 P. 241) As a result the Student has traumatic brain injury (TBI). During the Student's third and fourth grades the Student had a one-on-one aide. The Student had a successful fourth grade. (Trans. 11-27-06 P. 250). In the fourth

grade there were modifications in content of work, in the length of the assignment and in the testing procedures. There was an extended school year. He had a seven-week program at Camp O. Quidnessett in the trailblazer's program. (Trans. 11-27-06 P. 251) The grandparent testified that the Student benefited from the Trail Blazer Program. He did not have any behavioral problems there and he was able to interact with the children. (Trans. 11-24-06 P. 253)

The IEP for September, 2003 to November, 2003, fourth grade, provided the following:

1. Math Monitor/Resource Teacher.
2. Occupational Therapy.
3. APE/APE Teacher.
4. Language Therapy/SLP
5. Written Language/Resource Teacher

The placement for services for the Student was in regular education classes twenty-six hours of the week. (Trans. 11-27-06 P. 255)

In the third grade the Student was in regular classes for twenty-one hours and fifty-five minutes. (Trans. 11-27-06 P. 254)

In the fifth grade, the Student received all passing marks for the third quarter receiving a B – in Composition, C+ in Comprehension, B – in Grammar, C + in Reading Skills, B in Spelling, C in Math, C – in Social Studies, C – in Science, ) (outstanding) in music and S + in Foreign Language. (Plaintiff Exh. 32)

At the April 12, 2005 IEP Meeting, it was suggested by Mrs. DeBlois that the Student should not have a one-on-one aide because he was relying on it. (Plaintiff Exh. 26) (Trans. 11-22-06 P. 269) The Grandparents did not agree with that suggestion. The IEP team met on April 26, 2005 and the minutes reflected the Student needed to make progress toward more independence.

The IEP for June, 2005 to June, 2006 was not signed by the Grandparents because the one-on-one was taken out. The total time in Special Education Support Services was 18.5 hours and in regular education was 11.5. (Plaintiff Exh. 2)

On September 8, 14, 15, 2005 the Student was given a reading evaluation. It stated:

> "(The Student's) word reading is better than his oral comprehension. (The Student) would be most successful reading narrative text independently a second grade level. With teacher instruction (The Student) would benefit from reading Narrative text written at the fourth grade level. Regarding expository test...(The Student) would benefit from instruction at third grade level....) (Plaintiff Exh. 12)

An educational evaluation was performed on December 12, 2005. The Summary stated:

> "The Student demonstrated below average math fluency skills on this assessment. ...(The Student) demonstrated weakness in confusing signs. He also worked at a very slow rate.... (The Student's) language skills are in the below average range. He demonstrated weaknesses on recalling stories and understanding oral directions. (The Student) demonstrated high average spelling skills....... He demonstrated weakness in organizing his ideas and expanding upon his story plot. He also demonstrated weakness with his overall capitalizing skills."

The evaluation made the following recommendations:

A. Extra time to complete tests and assignments. As noted within the evaluation, (The Student) works very slowly and has some difficulty with accuracy particularly in the area of arithmetic skills.

B. Keep oral directions as short and concise as possible.

C. Whenever possible, back up oral directions with written directions.

D. (The Student) might need a copy of classroom notes with an oral lecture or when extensive information is being given through an auditory method.

E. The teacher should discreetly check with (The Student) to make sure that he is following the directions and is proceeding appropriately.

F. The use of graphic organizers is highly recommended to help (The Student) visually organize his ideas before writing and to help him expand upon those ideas.

G. When introducing new arithmetic concepts, try to provide a visual picture whenever possible.

H. The use of a system of rough drafts is recommended to help (The Student) with his weaker contextual language and contextual conventions.

I. Access to a computer for written reports may be beneficial in helping with weaker contextual conventions and language skills. (Plaintiff Exh. 13)

The proposed IEP for the year 5-16-06 to 5-16-07 (Plaintiff Exh. 1) has the Student in special education 30 hours per week which is for the entire school week. He would be in the program called the Discovery Program.

At the IEP Meeting for the 2006-2007 IEP, out of thirteen people present, the Grandparents had seven people present, the Grandparents, Laura Jones, Dr. Colucci, Regina Walsh, Anita James and Vera DeMarco. (Plaintiff Exh. 23) The Grandparent testified that there was no consensus as to the elimination of the one-on-one aide. (Trans. 11-27-06 P. 290) There was another IEP Meeting in May of 2006 but no minutes were introduced into evidence and the Grandparent requested a copy but never received the same. The May meeting was a continuation of the April 26, 2006 meeting. At the April, 2006 meeting the team started to go through the IEP page by page but they did not go through the entire IEP. (Trans 11-27-06 P. 292)

The IEP Team did not get through the IEP at the May meeting at which the Discovery Program was discussed but no one agreed to it. (Trans. 11-27-06 P. 293)

Another IEP Meeting was scheduled in June of 2006 but it was cancelled by Sue Pezza the day before the meeting.

The Grandparent testified that they never discussed the area of the IEP in which the special services were provided, page 14 of Exhibit 1. The Grandparents during this process went to observe the Discovery Program. (Trans. 11-27-06 P. 294) The Grandparents never received any notice of a change in educational placement (Trans. 11-27-06 P. 298)

The proposed IEP for the year 5-16-06 to 5-16-07 (Plaintiff Exh. 1) has the Student in special education 30 hours per week which is for the entire school week. He would be in the program called the Discovery Program. (Plaintiff's Exh. 1)

Marie Elena J. Ahern, principal of the Narragansett Middle School, testified. As to resource she said:

> "The model that's in place is the
> resource teacher provide both in
> class support for students as well
> as pull out model for certain
> students in reading and mathematics."
> (Trans. 10-24-06 P. 37)

Some students receive reading and math instruction in self-contained class. (Trans. 10-24-06 P. 37) These are two self-contained special education classes in the middle school, which are multi age and multi grade. When asked what determine's the need for a self contained class she said:

> ".....so there is a battery of tests that
> would be given and based on the
> results of that test and those scores
> it would be determined whether the
> child needs a self-contained classroom
> versus a resource model"
> (Trans 10-24-06 P.40)

The Student's IEP calls for a self-contained class which is a self contained with a qualifier and it is called the Discovery Program. The students go out of the self-contained class for unified arts and physical education or adaptive phys-ed.

It would be unusual for a student to be in the self-contained class for 100% of the day. (Trans. 10-24-06 P. 41) There are some students who receive self-contained services in English and Mathematics. (Trans. 10-24-06 P. 64)

Kevin Holden, a seventh grade social studies teacher, is presently teaching the Student. He testified that he is implementing modifications that would satisfy both the 2005-2006 IEP and the 2006-2007 proposed IEP. (Trans. 11-29-06 P. 330) Mrs. Durkin is an aide that primarily works with the Student. (Trans. 11-29-06 P. 336)

As to the Student's ability to meet success in his class Mr. Holden testified as follows:

> "...I don't think he can meet with success that he's looking for in my class regardless of one-on-one accommodation.... I feel like he still just not functioning at level where he's going to meet success." (Trans. 11-2—6 P. 337)
>
> "...he's not meeting with success. ...and he's unhappy. His withdrawn and he just sort of closes himself off to any assistance from other students or myself" (Trans. 11-29-06 P.37)

The progress report for the first several weeks of this school year indicates the Student had regular education teachers except for English and Math. (Plaintiff Exh.38) The Student received the following grades – English A, Math C, Social Studies C +, Science F, Literary B -, Foreign Language 0 (outstanding), Health S, Physical Education S. There was testimony during

this hearing from teachers that stated the marks are really not as good as indicated on the report cards. Those marks were scored higher to give the Student confidence.

Mr. Holden defined the Discovery Program as "Those Students who are deemed sort of unable to perform in the regular classrooms and could benefit from smaller class sizes and more one-on-one."

It was Mr. Holden's opinion that the Student would be better served if he was not in the regular ed classes for science and social studies. When asked if the Student should be in a self contained class all day his opinion was that he should be in a self contained class for English and Social Studies. (Trans 11-29-06 P. 350) This witness believes that it is detrimental to the Student socially and emotionally to be in his class. (Trans. 11-29-06 P. 361)

Ms. Suzanne K. Pezza, a behavioral specialist and special education teacher, testified. She is a certified instructor for TBI (Traumatic Brain injury) The Staff that worked with the Student was trained by Diane LaMontagne and this was done every year. (Trans 12-4-06)

She testified that in the 6th grade Ms. Gilligan, a special education teacher for Math, English and Reading, was his one-on-one instructor. Ms. Stone was with the Student for unified Arts, Social Studies and Science. (Trans. 12-04-06 P. 641) At the end of the 6th grade she recommended the Discovery Program for the Student. This was based on the work a seventh grade student had to do and that the Student could not keep up. (Trans. 12-04-06 P. 6481) This year the Student sits with a blank stare in Mr. Holden's Social Studies class and in Ms. Paskoski's Science class. (Trans 12-04-06 P. 649)

Julie Ann Camara, a special education teacher testified. The Student is in her classroom and this is the first year she had him in her class. (Trans 11-29-06 P. 384) She teaches in a self-contained classroom consisting of seven students. The Discovery Program title was changed to

"Miss Camara's Class". (Trans 22-29-06 P. 385) She can be assigned ten students. And she has two aides none of which are considered one-on-one. Other than literacy class, none of her students presently attend regular academic classes. (Trans 11-29-06 P. 391) There isn't more mainstreaming because it was recommended that Students receive the self-contained program based on their ability to learn and based on their needs.

During this witnesses testimony the School District conceded that an IEP that requires the Student to be in a self contained class for 100% of the time is not appropriate for this Student. (Trans. 11-29-06 P. 418)

Although more than one witness testified that page 14 of Plaintiff's Exhibit 1 is a mistake, I find that the mistake would have to have been made in seven places on page 14.

The IEP for the June, 2005 to June, 2006 did provide resource to accommodate the Student in the regular classroom (small group/whole class) with a special education/regular teacher, in a resource class (Small group/whole class) with a special education teacher and in the therapy room with an occupational therapist. There were no location of services in a self-contained class.

In the proposed IEP, some of the behavioral goals page 6 of Plaintiff's Exhibit 2 listed the location of service in a self-contained class as did language arts-written language and math/math reasoning.

Plaintiff Exhibit 2 indicates that the Student had special education services 18.5 hours and had regular education services 11.5 hours. For Mathematics, Reading, Written Language, O.T., Physical Education and for psychological services the Student received this resource somewhere other than in regular education. (Plaintiff Exh. 2, Page 14 #34) Ms. Camara testified that for Math, Reading and Written Language she knew it was provided in a "pull out setting" in a "self

contained" class because he was in the classroom next to her room which was a self contained class. (Trans. 11-29-06 P. 427)

In September, 2006 the intensive resource changed from what it was in the Student's 6th grade. Ms. Camara does not follow the students to science and social studies. Trans. 12-4-06 P. 696) For the students who had intensive resource for the prior year they would either go into the regular education resource support for three times a week or they would have a special education teacher for Math and English who is Ms. Camara. That was not explained to the Grandparents because it did not exist at the time of the last proposed IEP (Trans. 12-4-06 P. 697)

Mr. Capalbo, a former Director of Special Education for the Coventry School District testified. He went to observe the self contained class. He did not observe the entire class because some students were not present and the Student was not present.

He testified that most self-contained classes are arranged based on the homogeneity of the disability. It is unusual to find a setting wherein there is a wide range of disabilities. He stated that it makes the difficulty of instructing those youngsters that more difficult. (Trans. 23-4-06 P. 543) Mr. Capalbo testified that the classroom teacher told him that there were behavior problems in her class but she testified that there were no behavior issues. (Trans. 12-4-06 P. 776) Mr. Capalbo stated:

> "………When one is looking at a youngster like (the Student) from the standpoint of devising inclusionary programs, it's understood that someone like (The Student) is going to have difficulty in the regular setting. It's also understood if properly designed, the program in a regular setting can be both manageable and effective in providing programmatic services to a youngster like (The Student)" (Trans. 12-4-06 P. 610)

Mr. Capalbo observed self-contained classes hundreds of times during his professional career.

**DECISION**

**ISSUE:** Did the Proposed IEP for May 16, 2006 to May 16, 2007 provide the Student with a free appropriate public education?

In any review of an IEP, the first question to be asked is whether or not the School District followed the procedures set forth in the regulations pursuant to the IDEA. Parent or Guardian participation in the IEP process is central to that process. Hendrick Hudson Dist. Bd. V. Rowley 458 U.S. 176 at 205

> "It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process ……as it did upon measurement of the resulting IEP against substantive standards" Rowley 458 U.S. at 206 & 207

I find from the facts and the law that the Grandparents did not fully participate in the IEP process for the 2006 – 2007 year. The fact that an IEP meeting was called for June, 2006 confirms the testimony of the Grandparent that they were still discussing the IEP that was presented in April, 2006. Further, the Grandparents were investigating the Discovery Program for the 2006-2007 school year. However, testimony of the School District's Personnel clearly indicates that the Discovery Program no longer was available for the Student in the 2006-2007 school year. It would appear that the School District no longer had the Discovery Program and this decision was made after the last meeting with the Grandparents. The testimony from School

District personnel was very confusing about the self-contained class and available resource classes.

I find that the School District unilaterally concluded the IEP process and made placement Decisions without the Grandparents being present all in violation of section 300.501 of the regulations. The IEP process cannot be terminated by the School District nor can the School District make decisions about placement with out the Grandparent's participation. This is the backbone of the procedural protections afforded the Parent or Guardian of a disabled student under the IDEA.

Although the School District admitted during the hearing that the IEP was in error as to the Student being in a self contained class for 100% of his school week, the School District last minute recant does little to correct the fact that the IEP prepared by the Team is not appropriate.

I find from the facts and the law that there was a change in placement in violation of section 300.501 (C). The Parents never had a final meeting with the IEP Team as was intended by establishing the third Team Meeting that was to be held in June, 2006.

Again, the School District unilaterally decided to end the IEP process without any input from the Grandparents concerning the change of placement.

The IEP must include mainstreaming to the extent possible.

> "The Act requires States to educate handicapped children with nonhandicapped children whenever possible" Rowley 458 U.S. 202
>
> " The Act requires the State to establish procedures to assure that, to maximum extent appropriate, handicapped children, including children in public or private institutions or other case facility, are educated with children who are

> not handicapped and that special classes, separate schooling or other removal of handicapped children from the regular education process environment occurs only when the nature or severity of the handicap is such that such education in the regular classes with the use of supplemental aids and services cannot be achieved satisfactorily" Greer v. Rome City School District School District U.S. Ct. of Appeals 950 F/ 2d 699 (1991)

This directive is often referred to as "mainstreaming" of "placement in the least restrictive environment." To determine this issue it is necessary to examine the facts and such an inquiry requires an examination of the nature and severity of the child's handicapping condition, his needs and abilities and the school response to the child's needs. Greer v. Rome School District U.S. Ct. of Appeals 950 Fed 2d 688.

I find from the facts that the Student did achieve success under his last year IEP. A Review of Plaintiff's Exhibit 33 will confirm this opinion. Some School District personnel testified that those marks were achieved with a great deal of accommodations but that is what special education is all about. Of course there are accommodations which are mandated under the IDEA.

Plaintiff Exhibit 38, a first quarter report for this school year shows passing grades form all subjects except science. The School District's teachers testified that the marks really were not accurate because grades were raised to give the student confidence. Marks and grading is a method for determing progress. If the grade does not really reflect success or failure then they are useless in determing progress. If find that the grading system should accurately reflect

success or failure. The Supreme Court of the United States in Rowley clearly states that grades or marks will help to determine progress which is an indication that FAPE is being provided.

The April 26, 2006 IEP Meeting pointed out gains in the area of behavior and Janet Stone stated the Student greatly improved but did find the Student had several problems.

The evaluations performed in September, 2005 and December, 2005 did not make any recommendations other than recommendations to improve the accommodations, support and modifications to his then placement. (Plaintiff's Exhibits 12 & 13)

The Greer case specified three areas the School District can consider in determining whether education in the regular classroom may be achieved satisfactorily. First, the school district can compare the educational benefits that the Student will receive in a regular classroom supplemented by appropriate aids and services with the benefits the Student would receive in a self contained environment. Although witnesses for the School District testified that the Student was at times "lost" in the regular classroom or was unhappy about being there, there was little evidence as to the benefit the Student would have had in the self contained class and the School District did not consider what further accommodations could he make to allow the Student to continue in the regular classroom. Second, the School District can consider what effect the presence of the handicapped child has in a regular classroom would have on the education of other children in that classroom. There was no evidence presented that would indicate the Student had an adverse affect on other students or that the Student was disruptive in anyway in the regular classroom. Third and lastly, the School District may consider the cost of the supplemental aids and services that will be necessary to achieve satisfactory education for the Student in the regular classroom. The Greer case went on to say:

> "Not to say that a school district may
> decline to educate a handicapped

> child in a regular classroom because the cost of doing so, with the appropriate supplemental aids and services, would be incrementally more expensive than educating the child in a self-contained special education classroom. On the other hand, a school district cannot be required to provide a handicapped child with his or her own full-time teacher, even if this would permit the child to be satisfactorily educated in a regular classroom. The school district must balance the needs of each handicapped child against the needs of other children in the district. If the cost of educating a handicapped child in a regular classroom is so great that it would significantly impact upon the education of other children in the district, then education in a regular classroom is not appropriate." Greer v. Rome 950 F. 2d 688

I do not find any evidence that the School District even consider cost as a reason for not continuing the Student in the regular classes.

It should be noted that I did not find from the facts that any of these three elements to determine continued education in the regular education classes were even discussed. It is the responsibility of the School District to consider the full range of supplemental aids and services including resource rooms and itinerant instruction that could be provided to assist the Student in the regular class. These considerations have to take place during the IEP process. The School District presented limited options to the Grandparents.

I find from the facts and law that the proposed IEP for 2006-2007 school year (Plaintiff Exh. 1) does not provide FAPE.

In reviewing the array of special education programs under section 300.551 (A), I find that the Student's prior program is best described under section 300.551 (A) (2). Part-time placement in regular education classroom with supplemental part-time placement for a portion of the school day or of the school week in a room or another setting area for intensive, individual or small group instruction by special education teacher, together with appropriately certified specialists providing related services as defined in 300.136 of the regulations. These professionals shall also consult with the child's regular education classroom teachers and with the child's parents (s).

I hereby order the following:

1. That the program as defined under 300.551 (A) (2) of the regulations continue for the duration of the Student's 7th grade.

2. That the Student continue his placement in the regular education classes for science and social studies with a one-on-one teacher assistant that has appropriate training to assist the Student having a traumatic brain injury disability.

3. That itinerant subjects be in regular education classes with whatever supports are needed including one-on-one assistance when necessary.

4. That all other subjects including Math and English be in a room or other set aside area in which intensive, individual or small group instruction by a special education teacher together with appropriately certified specialist providing related services as defined in 300.136 of the regulation. I find that a "room" or other set "aside area" does not include a self-contained classroom.

5. That the hours per day for special services as written in the prior IEP Plaintiff's Exh. 2 be continued for the rest of this school year unless amended by further IEP decisions.

6. That the Student's time in Special Education per week is 18.5 hours and therefore, the class size for self-contained classes apply.

7. That the School District call an IEP meeting as soon as practicable to review this decision and to make whatever accommodations and modifications are necessary to follow this decision including a review of the recommendations

as found in the educational evaluation of December 12, 2005. Further, the IEP Team is to consider the need for an extended school year.

8. That the IEP Team set dates for preparation of an IEP for the 2007-2008 school year.

9. That the request by the Grandparents that academic teachers be hand selected for their willingness to work with the Student is hereby denied there being no evidence or law to support such a request.

10. That the request by the Grandparent for a case manager is hereby denied. If find insufficient evidence or law to support such a request.

11. That the Grandparents request that a mastery learning approach be utilized for the Student is hereby denied. It is clear for the case law that "methodology" is strictly left to the decision of the School District.

12. That the Grandparents request for "differential instruction techniques" be provided is denied for the same reason as #11 above.

13. That the Parents request for extended school year services at the Trailblazers Program is hereby denied because this is a request for a particular program , this again deals with "methodology" which is within the authority of the School District to determine and the IEP Team is to decide whether or not the Student is in need of an extended school year.

14. That the request that the Student's teachers and the one-on-one assistant be trained in traumatic brain injury is hereby denied. That matter is left to the IEP Team to decide.

15. That the Grandparents request for tutorial services as a resource is hereby denied. I found insufficient evidence from the facts that tutorial services are needed but I will direct that tutorial services be considered by the IEP Team.

DATE: January 16, 2007

Arthur G. Capaldi
1035 Main Street
Coventry, R.I. 02816
Tel: 821-3537